IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| **LITTLEFORD DAY, INC.**[1] | ) | |
| | ) | Case No. 15-10722 |
| | ) | |
| Debtor. | ) | |
| | ) | |

**MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 363(c), 364(c)(1-3), 364(d)(1) AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (II) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS, AND (IV) SCHEDULING A FINAL HEARING PURSUANT TO FED. R. BANKR. P. 4001(b) AND (c)**

Littleford Day, Inc. ("Littleford" or the "Debtor"), the debtor and debtor-in-possession in the above-captioned case, by and through its undersigned proposed counsel, files this motion (the "Motion") for entry of interim and final orders pursuant to sections 105, 363(c), 364(c)(1-3), 364(d)(1) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Local Bankruptcy Rules for the District of Delaware (the "Local Rules"), (I) authorizing the Debtor to enter into that certain Debtor-in-Possession Loan Agreement (the "Loan Agreement," attached hereto as Exhibit A) on an interim basis (the "Interim Order," attached hereto as Exhibit C), which will (a) consist of a budget-based credit facility not to exceed $750,000 (the "DIP Facility," and together with any other related agreements and collateral and security documents, the "DIP Loan Documents") that provides the Debtor with operating cash and working capital, (b) grant senior liens and

---

[1] The last four digits of Debtor's taxpayer identification number are 7511. Debtor's corporate headquarters are located at 7451 Empire Drive, Florence, Kentucky 41042.

superpriority administrative expense claims and (c) authorize the continued use of cash collateral; and (II) schedules a hearing to consider approval of the DIP Facility and the relief granted in the Interim Order on a final basis (the "Final Financing Order," together with the Interim Order are hereinafter referred so as the "DIP Financing Orders"). In support of its Motion, the Debtor respectfully states as follows:

## I. SUMMARY OF RELIEF REQUESTED

1. In accordance with Bankruptcy Rule 4001 and Local Rule 4001-2, below is a summary of the terms of the proposed DIP Facility and the Debtor's use of cash collateral:

**Borrower:** Littleford Day, Inc.

**Guarantors:** None

**Amount and Type of Facility:** The DIP Facility will consist of a credit facility of up to $750,000 at any one time outstanding. Availability will be based on the Approved Budget, subject to certain variances.[2]

**Interest Rate:** 3.5%

**Facility Fee:** $15,000

**DIP Lender:** Loedige Littleford Process Technology, LLC (the "Lender").[3] There is no administrative agent.

**Interim Borrowing Availability:** Subject to the potential for a 10% variance, $330,000 of the DIP Facility will be made available to the Debtor from the date of the entry of the Interim Order until the date of the entry of the Final Order.

**Perm. Borrowing Availability:** Up to $750,000 of the financing commitment will be made available to the Debtor from the date of the entry of the Final Financing Order, subject to the Approved Budget attached hereto as Exhibit B. The Approved Budget

---

[2] Undefined capitalized terms shall have the meaning ascribed to them in the Debtor-in-Possession Loan Agreement, which is attached hereto as Exhibit A.
[3] S-Two, LLC owns approximately 25% of the Lender. Two of the forty-six shareholders of the Debtor (who hold less than 15% of the shares in the Debtor) are members of S-Two, LLC. No other parties related to the Debtor are affiliated with the Lender.

2

shall cover the time periods as described in greater detail below. The Budget delineates expenditures that will be funded from the DIP Facility, however, the DIP Facility may be used to fund other unidentified expenses approved by the Lender. The availability under the DIP Facility will be reduced by the amount reserved for the professional fee carve out (the "Carve Out") described below. The borrowing availability may be further modified and amended from time to time with the consent of the DIP Lender and the Debtor.

**Carve Out**: The Carve Out is a reserve established to provide for: (i) statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930; (ii) fees payable to the Clerk of this Court; and (iii) Allowed Professional Fees subject to a $200,000 cap.

Subject to any order of the Bankruptcy Court and the DIP Loan Documents, the Debtor shall be permitted to pay fees and expenses incurred by approved bankruptcy professionals as such fees and expenses become due and payable.

**Budget and Use of Proceeds:** Subject to the Budget Variances (defined below), the expenditures authorized in the Approved Budget shall be adhered to on a period basis and a cumulative basis, provided, however, that unused expenditures shall carry forward to successive weekly Approved Budget periods on a line-by-line basis. It is contemplated that the amount of professional fees may fluctuate from time to time and therefore such amounts may exceed the weekly budgeted allocation, but in no event shall Debtor be permitted to use loan proceeds or the Collateral to pay fees in excess of the aggregate amounts set forth in the Approved Budget for that line item, subject to the Budget Variances. The Approved Budget delineates proposed uses, which are generally corporate expenditures and payments of other administrative claims.

Except as otherwise agreed upon in writing by and between Debtor and Lender, actual amounts for any budgeted line item may exceed the budgeted allocation by as much as ten percent (10%) during any given week (the "Budget Variances").

**Borrowing Conditions:** Authorized execution of the DIP Loan Documents, entry of the Final Financing Order and materially accurate representations in DIP Loan Documents. The Lender shall be selected by Debtor as the proposed "stalking horse" buyer for the sale of its assets and the both parties shall have executed the Sale Agreement, subject to Bankruptcy Court Approval. Other customary terms for facilities of this type also included.

**Maturity:** The first to occur of (i) the closing date of a sale of substantially all of the Debtor's assets or (ii) June 15, 2015.

**Security:** Subject to the Carve Out and Permitted Liens, all obligations under the DIP Facility will be entitled to (a) superpriority claim status pursuant to section 364(c)(1) of the Bankruptcy Code and (b) the DIP Facility will be secured by a first priority perfected lien on all Collateral, which includes Accounts, Chattel Paper, Deposit Accounts, Documents, Equipment, General Intangibles, Goods, Instruments, Inventory, Investment Property, and Supporting Obligations, including all Proceeds of the foregoing and all other collateral of the Borrower acquired after the Effective Date, (which will prime pre-existing liens to the extent applicable pursuant to section 364(d)(1)).

**Right to Credit Bid:** Upon entry of the Interim Order, the Lender will have the right to credit bid any portion of the advanced DIP Facility.

**Prepetition Lender:** The claims of MainSource Bank were paid in March 2015. No secured pre-petition indebtedness exists.

**Events of Default:** Usual and customary for facilities of this type. Other default provisions include: failure to obtain interim and final approval of the DIP Facility in a form and substance satisfactory to Lender within 30 days; and failure to achieve any of the following milestones: (i) filing of a motion to approve the Sale Agreement no later than April 6, 2015; (ii) entry of the Bidding Procedures Order no later than ten (10) days thereafter in the form, substance and manner required in the Sale Agreement; or (iii) entry of an Order of the Bankruptcy Court approving the sale in the form, substance and manner required in the Sale Agreement not later than June 8, 2015.

2. This summary is qualified by reference to the provisions of DIP Loan Documents.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction to consider this Application under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

4. The statutory predicates for the relief requested herein are sections 105(a) and 361, 362, 363, 364 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014.[4]

### III. BACKGROUND

#### A. The Bankruptcy Case

5. On April 2, 2015 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.

6. The Debtor continues to operate its business as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

7. No trustee or examiner has been appointed in this chapter 11 case and no committee has been appointed or designated.

#### B. The Debtor

8. Littleford is a manufacturer of custom-made process equipment (including mixers, dryers and granulators), which have a variety of applications for companies in a broad range of industries, including, without limitation, food and beverage, pharmaceutical, nutraceutical, plastic and chemical, and automotive. Littleford also maintains a parts business and provides technical guidance, maintenance and advisory assistance to its customers. The Company has been in business since 1882.

9. Littleford's facility is located in Florence, Kentucky. While the Company employed as many as sixty-five (65) individuals within the past year, due to substantial financial

---

[4] Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), Debtor hereby confirms its consent to the entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection therewith consistent with Article III of the United States Constitution.

challenges, Littleford has had to reduce its labor force to twenty-seven (27) employees as of the Petition Date.

10.    Littleford is a small company with significant operational costs. As of February 28, 2015, Littleford has had approximately $1 million in gross sales and has experienced a dramatic decline in order rate since the end of 2014. Within the past few years, Littleford's sales have been relatively flat in an environment of rising costs, which in turn has largely reduced its profit margins. Despite good faith efforts to reduce costs and enhance revenue, the Company simply has been unable to maintain adequate cash flow to satisfy its mounting obligations

11.    Littleford is party to a collective bargaining agreement ("CBA") with the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (USW) AFL-CIO, CLC on behalf of Local 8-0757. Littleford also sponsors the Littleford Day, Inc. Retirement Plan, a defined benefit plan for its union and salaried employees (the "Pension Plan"). The Pension Plan is currently frozen and underfunded. Littleford is unable to sustain the Pension Plan.

12.    Prior to the Petition Date, Littleford explored a variety of restructuring options. The Company decided to take further measures to minimize its carrying costs while it explored options, including the possibility of a sale. Ultimately, the Company decided it would attempt to effectuate a sale that would maximize value within a bankruptcy process that it submits will best serve the interests of Littleford's creditors, its employees, and its valued customers.

**C. Pre-Petition Indebtedness**

13.    Prior to the Petition Date, the Debtor maintained a line of credit with MainSource Bank, the successor-in-interest to The Merchants Bank and Trust Company. The amount owed to MainSource Bank was $1,922,746.48 (the "Pre-Petition Secured Claim"). The Debtor had no

availability under the MainSource line of credit and was therefore operating exclusively from available cash collateral.  The Debtor was struggling with its payment obligations and was unable to make payments to creditors as they came due.

14.     The Pre-Petition Secured Claim was secured by substantially all of the Debtor's assets, including, without limitation marketable securities.

15.     On March 23, 2015, the Debtor allowed for the liquidation of $1,876,952.60 in marketable securities and then paid $45,793.88 to MainSource in cash in order to pay off the Pre-Petition Secured Claim.[5]  As of the Petition Date, the line of credit remains closed and the Debtor has not credit available to it other than the proposed post-petition debt facility.

16.     Additional factual background information regarding the Debtor is set forth in detail in the First Day Declaration of J. Garvin Warden, Chief Financial Officer of Littleford Day, Inc.

**D. Need for Post-Petition Financing**

17.     The Debtor believes it has an immediate and critical need to obtain post-petition financing and to use cash collateral in order to advance its restructuring efforts and/or to sell certain of the Debtor's assets.  The Debtor does not have sufficient available sources of working capital to operate its businesses in the ordinary course of its business without the financing requested in this Motion.  The Debtor's ability to maintain business relationships with its vendors, suppliers and customers, to pay its employees, and to otherwise fund its operations is essential to the Debtor's continued viability as the Debtor seeks to maximize the value of the assets of the bankruptcy estate for the benefit of all creditors of the Debtor.

---

[5] While the Debtor has received a payoff notice, as of the Petition Date no UCC-3 termination statement has been filed by MainSource Bank.  Accordingly, in an abundance of caution, the Lender requires that the DIP Financing Orders provide it with a priming lien under section 364(d)(1).

7

18. The Debtor has requested and the DIP Lender is willing to extend certain loans, advances and other financial accommodations on the terms and conditions set forth in the DIP Loan Documents.

19. The Debtor is unable to procure financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code, as an administrative expense under Section 364(a) or (b) of the Bankruptcy Code, or in exchange for the grant of an administrative expense priority pursuant to Section 364(c)(1), 364(c)(2) or 364(c)(3) of the Bankruptcy Code, without the grant of liens on assets. The Debtor has been unable to procure the necessary financing on terms more favorable taken as a whole, than the financing offered by Lender pursuant to the DIP Loan Documents.

20. The Debtor submits that, in an exercise of its prudent business judgment, the terms of the DIP Loan Documents are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to a debtor-in-possession, and are supported by reasonably equivalent value and fair consideration. The Debtor has concluded that the proposed financing represents the best financing presently available to the Debtor

21. The terms and conditions of the DIP Loan Documents have been negotiated in good faith and at arms' length by and between the Debtor, on one hand, and Lender on the other hand, with all parties being represented by counsel. Any credit extended under the terms of the Interim Order shall be deemed to have been extended in good faith by Lender as that term is used in Section 364(e) of the Bankruptcy Code and in reliance upon the protections of Section 364(e). Lender is entitled to the full protection of Section 364(e) of the Bankruptcy Code and this Interim Order in the event this Interim Order or any provisions hereof is vacated, reversed, amended or modified on appeal or otherwise.

## IV. **RELIEF SOUGHT AND BASIS FOR RELIEF REQUESTED**

22.     The Debtor requires financing and in conjunction therewith authority to use cash collateral to fund post-petition cash requirements, operate its businesses in the ordinary course of its business, maintain business relationships, pay its employees and to otherwise fund its operations in order to preserve its continued viability and by extension value for the benefit of all creditors and interest holders.  The Debtor is unable to locate credit on equal or more favorable terms than those set forth in the DIP Loan Documents.  After considering all alternatives, the Debtor has concluded in a reasoned and prudent exercise of its business judgment that the loan facility provided under the DIP Loan Documents represents the best financing available to them. Accordingly, the Debtor requests approval of the DIP Facility and authority to use cash collateral going forward to maintain its enterprise value while exploring its restructuring options.

23.     Pursuant to section 364(c) of the Bankruptcy Code, a debtor may, in the exercise of its business judgment, incur secure debt if the debtor has been unable to obtain unsecured credit and the borrowing is in the best interests of the estates.  See, e.g., In re Simasko Production Co., 47 B.R. 444, 448-9 (D. Colo. 1985) (authorizing interim financing stipulation where debtor's best business judgment indicated financing was necessary and reasonable for benefit of estates); In re Ames Dept. Stores, 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990) (courts permit a debtor to exercise its basic business judgment consistent with its fiduciary duties).

24.     Section 364(c) of the Bankruptcy Code provides, in pertinent part, that:

> (c)     If the trustee [or debtor in possession] is unable to obtain unsecured credit allowable under section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt:

    (1)    with priority over any and all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;

    (2)    secured by a lien on property of the estate that is not otherwise subject to a lien; or

    (3)    secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

25. The Debtor satisfies the requirements of Bankruptcy Code section 364(c)(1-3) because it is unable to obtain the credit it requires on terms as favorable as in the DIP Loan Documents on an unsecured, administrative expense claim basis without the additional protections available under subsections (1) through (3) of section 364(c) of the Bankruptcy Code. The Debtor has contacted approximately twenty (20) alternative lenders and none were willing to provide a debt facility of the size of the DIP Facility in exchange for a rate of return comparable to that being offered by the Lender.

26. In satisfying the standards of section 364 of the Bankruptcy Code, a debtor need not seek credit from every available source but should make a reasonable effort to seek other sources of credit available of the type set forth in Bankruptcy Code sections 364(a) and (b). See In re Snowshoe Co., 789 F.2d 1085, 1088 (4th Cir. 1986) (trustee has demonstrated by good faith effort that credit was not available without senior lien by unsuccessfully contacting other financial institutions in immediate geographic area; "the statute imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable"); Ames, 115 B.R. at 40 (finding that debtors demonstrated the unavailability of unsecured financing where debtors approached several lending institutions).

25. As set forth in the First Day Declaration of J. Garvin Warden, the Debtor attempted to negotiate alternative financing arrangements, however, the Debtor was not able to

secure post-petition financing on as competitive a basis as provided by the DIP Lender. Accordingly, the Debtor believes that the financing arrangement proposed by the DIP Lender represents the best available to it at this time. The Interim Order (a) has been negotiated in good faith and at arm's length among the parties; (b) reflects the Debtor's exercise of prudent business judgment consistent with its fiduciary duties as a debtor-in-possession; and (c) is fair and reasonable under the circumstances. Accordingly, under the circumstances of this chapter 11 case, the granting of the relief requested in this Motion is warranted.

26. In the event the Court approves the DIP Financing, Lender consents to use of cash collateral derived from pre- and post-petition periods, thereby satisfying section 363(c)(2)(A) of the Bankruptcy Code.

27. Additionally, while the Debtor believes the Pre-Petition Secured Claim has been indefeasibly paid in full, no UCC-3 termination statement releasing the former lien has been filed as of the Petition Date. Accordingly, in an abundance of caution, the Lender has requested that the DIP Financing Orders include the grant of a priming lien pursuant to section 364(d)(1) of the Bankruptcy Code, to the extent applicable. Since the Debtor understands the Pre-Petition Secured Claim to be paid in full, the Debtor submits that MainSource's remaining interests, whatever they might, are adequately protected.

## V. APPROVAL OF THE DIP FACILITY ON AN INTERIM BASIS IS NECESSARY TO PREVENT IMMEDIATE AND IRREPARABLE HARM

28. Bankruptcy Rule 4001(c)(2) governs the procedures for obtaining authorization to obtain postpetition financing and provides, in relevant part:

> The court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 14 day period expires, but the court may authorize the

11

> obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

Fed. R. Bankr. Proc. 4001(c)(2).

29. When considering requests for interim relief under this rule, courts in this jurisdiction generally apply the same business judgment standard applicable to other business decisions. See Ames Dep't Stores, 115 B.R. at 36.

30. The Debtor will suffer immediate and irreparable harm if the relief requested in this Motion, including authorizing the Debtor to borrow up to $330,000 on an interim basis, is not granted promptly after the Petition Date. The Debtor anticipates it will experience a liquidity crisis absent approval of interim financing, which, by extension, will impair its ability to preserve ongoing business relationship and maintain the Debtor's enterprise value for the benefit of all parties in interest.

31. The importance of a debtor's ability to secure post-petition financing to prevent immediate and irreparable harm to its estate has been repeatedly recognized in this District. See, e.g., In re Exide Techs., No. 13-11482 (Bankr. D. Del. June 11, 2013); In re LSP Energy Ltd. P'ship, No. 12-10460 (Bankr. D. Del. Nov. 27, 2012). Accordingly, for the reasons set forth above, prompt entry of the Interim Order is necessary to avert immediate and irreparable harm to the Debtor's estate and is therefore warranted under Bankruptcy Rule 4001.

## VI.  REQUEST FOR FINAL HEARING

32. Pursuant to Bankruptcy Rules 4001(c)(2) and Local Bankruptcy Rules 4001-2(c), the Debtor requests that the Court set a date for the final hearing that is as soon as practicable, but in no event later than 30 days following the Petition Date, and fix the time and date prior to the final hearing for parties to file objections/responses to this Motion.

33. To implement the foregoing, the Debtor respectfully requests a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## VII. **NOTICE**

34. Debtor will provide notice of this Motion by fax, email, overnight delivery, or hand delivery to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the 20 largest unsecured claims against the Debtor; (iii) counsel to any official committee appointed pursuant to section 1102 of the Bankruptcy Code; (iv) the Internal Revenue Service; (v) MainSource Bank, the pre-petition lender, (vi) counsel for Loedige Littleford Process Technology, LLC, (vii) all appropriate state taxing authorities, including, without limitation the Commonwealth of Kentucky Department of Revenue (viii) all landlords, owners, and/or operators of premises at which the Debtor's inventory and/or equipment is located, (vii) certain other parties identified in the certificate of service filed with the Court, including, without limitation, all creditors who have filed or recorded pre-petition liens or security interests against any of the Debtor's assets, and (ix) any parties having filed requests for notice in this chapter 11 case pursuant to Bankruptcy Rule 2002.

35. As this Motion seeks "first day" relief, notice of the Motion and any order entered with respect to it shall be served in accordance with Local Rule 9013-1(m). Debtor submits that no other or further notice is necessary given the urgency of the relief being requested in the Motion.

36. No prior motion for the relief requested herein has been made by the Debtor to this or any other Court.

## VIII. CONCLUSION

WHEREFORE, the Debtor respectfully requests that this Court enter the Interim Order, substantially in the form attached hereto as Exhibit C, set a date for hearing to consider entry of the Final Order and grant such other and further relief as the Court deems just and proper.

Dated: April 2, 2015                                Respectfully submitted,

**CROSS & SIMON, LLC**

 /s/ Michael J. Joyce
Michael J. Joyce (No. 4563)
Kevin S. Mann (No. 4576)
Cross & Simon, LLC
1105 North Market Street
Suite 901
Wilmington, DE  19801
Telephone: (302) 777-4200
mjoyce@crosslaw.com
kmann@crosslaw.com

-and-

**McGUIREWOODS LLP**
Michael J. Roeschenthaler (PA 87647)
Frank J. Guadagnino (PA 309768)
EQT Plaza
625 Liberty Avenue, 23rd Floor
Pittsburgh, PA  15222
Telephone: (412) 667-6000
Facsimile: (412) 667-6050
mroeschenthaler@mcguirewoods.com
fguadagnino@mcguirewoods.com

*Proposed Attorneys for the Debtor and Debtor-in-Possession*