IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| LITLEFORD DAY, INC.,[1] | ) | Case No.15-10722 (KG) |
| | ) | |
| Debtors. | ) | |

**LIMITED OBJECTION OF THE HERSHEY COMPANY TO THE MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS PURSUANT TO 11 U.S.C. §§ 105, 363(c), 364(c)(1-3), 364(d)(1) AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (II) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, (III) GRANTING LIENS AND SUPER-PRIORITY CLAIMS, AND (IV) SCHEDULING A FINAL HEARING PURSUANT TO FED. R. BANKR. P. 4001(b) AND (c)**

The Hershey Company, by and through its undersigned counsel ("Hershey"), hereby objects to the *Motion for Entry of Interim and Final Orders Pursuant to 11 U.S.C. §§ 105, 363(c), 364(c)(1-3), 364(d)(1) and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014 (I) Authorizing Debtor to Obtain Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (III) Granting Liens and Super-Priority Claims, and (IV) Scheduling a Final Hearing Pursuant to Fed. R. Bankr. P. 4001(b) and (c)* (the "DIP Financing Motion") as follows:

1. Hershey is a customer of the above-captioned debtor ("Debtor") and one of its largest unsecured creditors.

2. Prior to the commencement of this case, Hershey issued two purchase orders to the Debtor for the manufacturer of three custom mixers for its business.

---

[1] The last four digits of Debtor's taxpayer identification number are 7511. Debtor's corporate headquarters are located at 7451 Empire Drive, Florence, Kentucky 41042.

3.  Purchase order 66138057 called for the manufacturer by the Debtor of two gum mixers at a value of $1,049,353.35. As of the Petition Date, Hershey had made progress payments totaling in excess of $630,000 toward the completion of these custom mixers.

4.  Purchase Order 66139631 called for the manufacture by the Debtor of a sugar mixer at a value of $160,796. As of the Petition Date, Hershey had made progress payments of approximately $100,000 toward the completion of the sugar mixer.

5.  Upon information and belief, the three mixers are not in a state of completion that would enable the Debtor or any buyer to comply with the completion and delivery deadlines required under the Purchase Orders. Moreover, Hershey has been advised that other than the completion of the drawings and the purchase of certain limited custom parts for the mixers, little work has been done to complete the three mixers. One estimate is that it will take "40 weeks" to complete the mixers, which under the purchase orders were to be completed next month.

6.  Through the DIP Financing Motion, the Debtor seeks to provide the Stalking Horse with a lien on "all assets" of the Debtor. Hershey hereby objects to the granting of any lien on or security interest in the drawings and custom parts that constitute the work-in-progress on its custom job ("Hershey Work-in-Progress").

7.  The Stalking Horse has offered $1.75 million for the Debtor's assets. The DIP financing package requires the Stalking Horse to lend up to $750,000 to bridge the Debtor from the Petition Date through the closing date of any sale, which is projected to be in June, 2015.

8.  As such, the Stalking Horse, by its own admission, believes that it enjoys (at a minimum) a $1 million equity cushion in its collateral over and above the maximum amount of its postpetition loan.

9. The Hershey Work-in-Progress is comprised of drawings and miscellaneous custom spare parts that have little or no value to the Debtor, the Stalking Horse or any other buyer for that matter, particularly since the purchase orders are not capable of being assumed and assigned and/or completed at anything other than a significant loss. As such, a carve-out of the Hershey Work-in-Progress from the Stalking Horse's collateral package will have no effect on the Stalking Horse or the estate.

10. The terms of the DIP Financing arrangement are otherwise onerous for a loan of this nature. As stated above, even before the Debtor gets to an auction, the Stalking Horse enjoys, at a minimum, a $1 million equity cushion in the value of its collateral over the amount of its maximum loan exposure.

11. Under these circumstances, the inclusion of the following "bells and whistles" are simply inappropriate and unreasonable:

    (i) a section 506(c) waiver;

    (ii) a lien on, and super priority claim against, the proceeds of avoidance actions;

    (iii) a restrictive 10% variance on the budget items;

    (iv) a request that a sale close by June 15, 2015 (before the sale order will even be final under the current sale timeline);

    (v) a full release of the Stalking Horse once the challenge deadline expires in just 10 days;

    (vi) a determination that the lender is not an owner/operator of the business; and

    (vii) certain other provisions that would appear to advantage the Stalking Horse to any other potential bidder in the sale process.

12. Local Rule 4001-2(a)(i) requires that the Debtor highlight certain provisions contained in any financing arrangement and "justify the inclusion of such provision[s]." Not

only has the Debtor not highlighted these provisions as required by the Court, but it has not justified why these provisions are necessary under the circumstances of this case.

13. Hershey believes that the foregoing "protections" being afforded to the Stalking Horse are unreasonable and inappropriate under the circumstances of this case, and that the DIP financing package should be approved only if these elements of the financing are removed.

14. Hershey has requested a brief adjournment of the hearing to attempt to resolve these issues (to which no response has been received). Hershey reserves the right to supplement, settle or withdraw this limited objection at or prior to the hearing.

WHEREFORE, Hershey respectfully requests that the DIP Financing Motion be approved only if the Hershey Work-in-Progress is carved out from the Stalking Horse's collateral and the onerous terms and provisions referenced above are stricken from the financing package, and that this Court grant such other and further relief as is just and proper.

Dated: April 29, 2015

Respectfully requested

COZEN O'CONNOR

_____
Mark E. Felger (No. 3919)
1201 N. Market Street, Suite 1001
Wilmington, DE 19801
Telephone: (302) 295-2000
mfelger@cozen.com

Counsel for The Hershey Company