**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| LITTLEFORD DAY, INC. | Case No. 15-10722 (KG) |
| Debtor. | **Re: Docket Nos. 12 & 50** |

**FINAL ORDER (A) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION
FINANCING AND GRANTING SECURITY INTERESTS AND SUPERPRIORITY
ADMINISTRATIVE EXPENSE STATUS PURSUANT TO 11 U.S.C. §§ 105 AND 364(c);
(B) MODIFYING THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; AND (C)
AUTHORIZING DEBTOR TO ENTER INTO FINANCING AGREEMENTS**

Upon consideration of the motion (the "Motion"), dated April 2, 2015, of Littleford Day,

Inc. ("Borrower" or "Debtor"), as a debtor and debtor-in-possession in the above-captioned

Chapter 11 case      (the "Case"), pursuant to Sections 105, 362, 363, 364(c)(1), 364(c)(2),

364(c)(3)  and 364(d)(1) of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the

"Bankruptcy Code") and Rules 2002, 4001(c), 6004 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), seeking:

1) authorization for Borrower to obtain loans, advances and other financial

accommodations (i) on an interim basis for a period through and

including the date of the Final Hearing (as defined below) and (ii) on a

final basis upon the entry of this final order (the "Final Financing

Order"), from Loedige Littleford Process Technology, LLC ("Lender")

in accordance with all of the terms and conditions set forth or referenced

in the Loan Documents, as defined in a certain Debtor-in-Possession

Loan Agreement, dated April 2, 2015 (the "Loan Agreement" and

annexed hereto as **Exhibit 1**) and hereinafter referred to as the "DIP

Loan Documents" and in accordance with the Interim Order (as defined

below) and this Final Financing Order, secured by superpriority security interests in and liens upon all of the Collateral (as that term is defined in the Loan Agreement and hereinafter referred to as the "Collateral") and subject only to Permitted Liens (as defined below) pursuant to Sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code;

2) the granting to Lender of superpriority administrative claim status pursuant to Section 364(c)(1) of the Bankruptcy Code in respect of all Obligations (as the term is defined in the Loan Documents);

3) subject only to and effective upon entry of this Final Financing Order, the limitation of the Debtor's right to assert claims to surcharge against the Collateral pursuant to Section 506(c) of the Bankruptcy Code to the extent set below;

4) modification of the automatic stay to the extent hereinafter set forth; and

5) the setting of a final hearing on the Motion to be held within 30 days of the entry of the Interim Order (as defined below) to consider entry of this Final Financing Order authorizing, among other things, the balance of the borrowing under the DIP Loan Documents on a final basis, as set forth in the Motion and the DIP Loan Documents filed with the Court.

It appearing that due and appropriate notice (the "Notice") of the Motion, the relief requested therein, the interim hearing (the "Interim Hearing") and the final hearing (the "Final Hearing") having been served by the Debtor in accordance with Rule 4001(c) on (i) counsel to Loedige Littleford Process Technology, LLC, (ii) the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), (iii) the holders of the twenty (20) largest unsecured claims against the Debtor's Estate (the "20 Largest Unsecured Creditors"), (iv) counsel to any

official committee appointed pursuant to section 1102 of the Bankruptcy Code (the "Committee"); (vi); the Internal Revenue Service, (v) all appropriate state taxing authorities, (vi) all landlords, owners, and/or operators of premises at which the Debtor's inventory and/or equipment is located, (vii) MainSource Bank, (viii) certain other parties identified in the certificate of service filed with the Court, including, without limitation, all creditors who have filed or recorded pre-petition liens or security interests against any of the Debtor's assets, and (ix) any parties having filed requests for notice in this chapter 11 case pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties").

Upon the record made by the Debtor at the Interim Hearing and the Final Hearing, including the Motion and the First Day Declaration of J. Garvin Warden filed in support of the Debtor's first day motions and applications, and the filings and pleadings in the Case, and good and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.    Petition.    On April 2, 2014 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its businesses and manage its properties as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

B.    Jurisdiction and Venue.    The Court has jurisdiction of this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. The Motion is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (D) and (M). Venue of the Case and the Motion in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Interim Order.    The Court duly entered an Interim Order (A) Authorizing Debtor to Obtain Post-Petition Financing and Granting Security Interest and Superpriority

Administrative Expense Status Pursuant to 11 U.S.C. §105 and 364(c); (B) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; and (C) Authorizing Debtor to Enter Into Financing Agreements (the "Interim Order") on April 9, 2015, granting the Motion on an interim basis.

D.    Notice.  Under the circumstances, the Notice given by the Debtor of the Motion, the Interim Hearing, the relief granted under the Interim Order, the Final Hearing, and the relief granted under this Final Financing Order, constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and 4001(c).

E.    Findings Regarding the Post-Petition Financing.

(i)    *Post-Petition Financing.*  The Debtor has requested Lender, and Lender is willing, to extend, certain loans, advances and other financial accommodations on the terms and conditions set forth in the DIP Loan Documents.

(ii)    *Need for Post-Petition Financing.*  The Debtor does not have sufficient available sources of working capital, including cash collateral, to operate its businesses in the ordinary course of its business without the financing requested under the Motion.  The Debtor's ability to maintain business relationships with its vendors, suppliers and customers, to pay its employees, and to otherwise fund its operations is essential to the Debtor's continued viability as the Debtor seeks to maximize the value of the assets of the Estate (as defined below) for the benefit of all creditors of the Debtor.  The ability of the Debtor to obtain sufficient working capital and liquidity through the proposed post-petition financing arrangements with Lender, as set forth in the Interim Order, this Final Financing Order, and the DIP Loan Documents is vital to the preservation and maintenance of the going concern values of the Debtor.  Accordingly, the Debtor has an immediate need to obtain the post-petition financing in order to, among other things, permit the orderly continuation of the operation of its businesses, minimize the disruption of its business operations, and preserve and maximize the value of the

assets of the Debtor's bankruptcy estate (as defined under Section 541 of the Bankruptcy Code, the "Estate") in order to maximize the recovery to all creditors of the Estate.

(iii)    *No Credit Available on More Favorable Terms.*  The Debtor is unable to procure financing in the form of unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code, as an administrative expense under Section 364(a) or (b) of the Bankruptcy Code, or in exchange for the grant of an administrative expense priority pursuant to Section 364(c)(1), 364(c)(2) or 364(c)(3) of the Bankruptcy Code, without the grant of liens on assets.  The Debtor has been unable to procure the necessary financing on terms more favorable taken as a whole, than the financing offered by Lender pursuant to the DIP Loan Documents.

(iv)    *Business Judgment and Good Faith Pursuant to Section 364(e).*  The terms of the DIP Loan Documents and this Final Financing Order are fair, just and reasonable under the circumstances, are ordinary and appropriate for secured financing to a debtor-in-possession, reflect the Debtor's exercise of its prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration. The terms and conditions of the DIP Loan Documents and this Final Financing Order have been negotiated in good faith and at arms' length by and between the Debtor, on one hand, and Lender on the other hand, with all parties being represented by counsel.  Any credit extended under the terms of the Interim Order or this Final Financing Order shall be deemed to have been extended in good faith by Lender as that term is used in Section 364(e) of the Bankruptcy Code and in reliance upon the protections of Section 364(e).  Lender is entitled to the full protection of Section 364(e) of the Bankruptcy Code, the Interim Order and this Final Financing Order, in the event that the Interim Order, this Final Financing Order, or any provision thereof or hereof is vacated, reversed, amended or modified on appeal or otherwise.

(v)    *Good Cause*.  The relief requested in the Motion is necessary, essential and appropriate, and is in the best interest of and will benefit the Debtor, its creditors and its Estate, as its implementation will, among other things, provide the Debtor with the necessary liquidity to (a) minimize disruption to the Debtor's businesses and on-going operations, (b) preserve and maximize the value of the Debtor's Estate for the benefit of all the Debtor's creditors, and (c) avoid immediate and irreparable harm to the Debtor, its creditors, its businesses, its employees, and its assets.

(vi)    *Immediate Entry*.  Sufficient cause exists for immediate entry of this Final Financing Order pursuant to Bankruptcy Rules 4001(c)(2).  No party appearing in the Case has filed or made an objection to the relief sought in the Motion, the entry of the Interim Order, or this Final Financing Order, or any objections that were made (to the extent such objections have not been withdrawn) are hereby overruled.

Based upon the foregoing, and after due consideration and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

Section 1.    Authorization and Conditions to Financing.

1.1    Motion Granted.  The Motion is granted on a final basis and in accordance with Bankruptcy Rule 4001(c)(2).  Except as otherwise expressly provided in this Final Financing Order, any objection to the entry of this Final Financing Order that has not been withdrawn, waived, resolved or settled, is hereby denied and overruled on the merits.

1.2    Authorization to Borrow and Use Loan Proceeds.  Borrower is hereby authorized to immediately borrow and obtain loans and to incur indebtedness and obligations pursuant to the terms and conditions of this Final Financing Order and the DIP Loan Documents in such amounts as may be made available to Borrower from Lender in accordance with all of the terms and conditions set forth in DIP Loan Documents, this Final Financing Order and the

Budget attached hereto as **Exhibit 2** (the "Budget"). Subject to the terms and conditions contained in this Final Financing Order and the DIP Loan Documents, Borrower shall use the proceeds of the loans made pursuant to the DIP Loan Documents and any other credit accommodations provided to Borrower pursuant to this Final Financing Order for the payment of the expense items specified in the Budget.

    1.3    Budget Covenants. The Debtor shall only pay expenses in accordance with the specific purposes, and at the specific time periods set forth in the Budget, subject to a ten (10%) percent variance on a line-by-line basis; said variance shall be determined on a cumulative carry forward basis, per line item only. Within three (3) business days of the completion of each week under the Budget, the Debtor shall provide to Lender an "actual to budget" report for all cash receipts and disbursements.

    1.4    DIP Loan Documents

    1.4.1  *Authorization.* Debtor was by the Interim Order and is hereby authorized to immediately enter into the Loan Agreement and deliver, perform, and comply with all of the terms, conditions and covenants of the DIP Loan Documents. Upon execution and delivery of the Loan Agreement, the Loan Agreement shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with the terms of the DIP Loan Documents and this Final Financing Order. No obligation, payment, transfer or grant of security under the DIP Loan Documents or this Final Financing Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under Section 502(d) of the Bankruptcy Code), or be subject to any defense, reduction, setoff, recoupment or counterclaim.

    1.4.2  *Approval.* The DIP Loan Documents are approved to the extent necessary to implement the terms and provisions of this Final Financing Order. All of such

terms, conditions and covenants shall be sufficient and conclusive evidence of the borrowing arrangements by and between Debtor and Lender, including, without limitation, to the extent applicable, the payment of all Obligations arising thereunder, including, without limitation, all principal, interest, DIP facility fees, and other fees and expenses, including, without limitation, all consultant fees, professional fees, attorneys' fees and legal expenses; provided, however, that (a) the Debtor, the U.S. Trustee and the Committee (if any) shall have ten (10) days from receipt to review the Post-Petition legal invoices of Lender for reasonableness and (b) in the event the Debtor, the U.S. Trustee or the Committee (if any) shall file with this Court an objection to any such legal invoice within ten (10) days of its receipt thereof, the portion of such legal invoice subject to such objection shall not be paid until resolution of such objection by this Court and (c) in the event neither the Debtor, the U.S. Trustee nor the Committee (if any) shall file with this Court an objection to any such legal invoice within ten (10) days of its receipt thereof, such legal invoice shall not be subject to any further review or challenge.

1.4.3    *Amendment*.  Subject to the terms and conditions of the DIP Loan Documents, Lender and the Debtor may amend, modify, supplement or waive any provision of the DIP Loan Documents without further approval or order of the Court so long as (i) such amendment to the DIP Loan Documents is not material. For purposes hereof, a "material" amendment to the DIP Loan Documents shall mean, any amendment to the DIP Loan Documents that operates to increase the interest rate other than as currently provided for in the DIP Loan Documents, increase the credit limits, add specific new events of default or enlarge the nature and extent of default remedies available to Lender following an event of default, or otherwise modify any terms and conditions in any loan document in a manner materially less favorable to Debtor and is undertaken in good faith by Lender and Debtor and (ii) the Debtor provides prior written notice of the amendment to the DIP Loan Documents to (x) the U.S.

Trustee, and (y) counsel to the Committee (if any).  Any material amendment to the DIP Loan Documents must be approved by the Court to be effective.

### 1.5    Payments and Application of Payments.

1.5.1    *Lender.*        The Debtor is authorized to make all payments and transfers of Estate property to Lender as provided, permitted and/or required under the DIP Loan Documents, which payments and transfers shall not be avoidable or recoverable from Lender under Section 547, 548, 549, 550, 553 or any other Section of the Bankruptcy Code, or any other claim, charge, assessment, or other liability, whether by application of the Bankruptcy Code, other law or otherwise.  All proceeds of the Collateral received by Lender, and any other amounts or payments received by Lender in respect of the Obligations (as defined in the Loan Agreement) due to Lender pursuant to the DIP Loan Documents (the "Obligations") shall be applied or deemed to be applied by Lender to the Obligation in accordance with the DIP Loan Documents and this Final Financing Order.  Without limiting the generality of the foregoing, the Debtor is authorized, without further order of this Court, to pay or reimburse Lender for all present and future costs and expenses, including, without limitation, all professional fees, consultant fees and legal fees and expenses paid or incurred by Lender in connection with the financing transactions as provided in this Final Financing Order and the DIP Loan Documents, all of which shall be and are included as part of the principal amount of the Obligations, and secured by the Collateral.

### Section 2.    Post-Petition Lien; Superpriority Administrative Claim Status.

### 2.1    Post-Petition Lien.

2.1.1    *Post-Petition Lien Granting.*  To secure the prompt payment and performance of any and all Obligations of whatever kind, nature or description, absolute or

contingent, now existing or hereafter arising, Lender shall have and is hereby granted, effective as of the Petition Date, valid and perfected first priority security interests and liens, superior to all other liens, claims or security interests that any creditor of the Debtor's Estate may have in and upon all of the Collateral, including, upon entry of this Final Financing Order, any property and/or proceeds recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to Sections 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code (the "Avoidance Actions"); provided that the Lender shall be required to marshal its Collateral to the limited extent (and only to the extent) necessary to ensure that its lien on Avoidance Actions is a "last out" lien, with the proceeds thereof being held in escrow until such time as the DIP Loans are fully, finally and indefeasibly paid in full out of all other Collateral.

2.1.2    *Lien Priority*.    The liens and security interests of Lender granted under the DIP Loan Documents and this Final Financing Order in and to the Collateral shall be and shall continue to be first and senior in priority to all other interests and liens of every kind, nature and description (except for Permitted Liens), whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with Section 363, 364 or any other Section of the Bankruptcy Code or other applicable law; subject only to the Carve Out Expenses (as defined below).  The following are Permitted Liens:

(a)    carriers', warehousemen's, mechanics', materialmen's, repairmen's, or other similar Liens arising in the ordinary course of business which are not overdue or which are being contested in good faith by appropriate proceedings;

(b)    pledges or deposits in connection with workers' compensation, general liability insurance and/or claims or unemployment insurance; and

(c)    Liens imposed by any Governmental Authority for taxes, assessments or charges not yet due or that are being contested in good faith and by appropriate proceedings if, unless the amount thereof is not material with respect to its financial condition, adequate reserves with respect thereto are maintained on the books of the Borrower in accordance with GAAP, provided the same have no priority over any of the lender's security interests (together the "Permitted Liens").

The holder of any properly perfected lien that is otherwise unavoidable as of the Petition Date and not a Permitted Lien may seek adequate protection at any time prior to the hearing on the sale referenced in decretal paragraph 3.1 below.

2.1.3    *Post-Petition Lien Perfection.*  This Final Financing Order shall be sufficient and conclusive evidence of the priority, perfection and validity of the post-petition liens and security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state or local requirements or law requiring notice, filing, registration, recording or possession of the Collateral, or other act to validate or perfect such security interest or lien ("Perfection Act").  Notwithstanding the foregoing, if Lender shall, in its sole discretion, elect for any reason to file, record or otherwise effectuate any Perfection Act, such party is authorized to perform such act, and the Debtor is authorized to perform such act to the extent necessary or required by Lender, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Final Financing Order notwithstanding the date and time actually accomplished, and in such event, the subject filing or recording office is authorized to accept, file or record any document in regard to such act in accordance with applicable law.  Lender may choose to file, record or present a certified copy of this Final Financing Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept,

file or record such certified copy of this Final Financing Order in accordance with applicable law. Should Lender attempt to file, record or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive or alter the validity, enforceability, attachment, or perfection of the post-petition liens and security interests granted herein by virtue of the entry of this Final Financing Order.

2.2     Superpriority Administrative Expenses. Subject to the payment of Carve Out Expenses as provided herein, for all Obligations now existing or hereafter arising, Lender is granted an allowed superpriority administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities and indebtedness of Debtor whether now in existence or hereafter incurred by Debtor, and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, *inter alia*, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 364(c)(1), 546(c), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed superpriority administrative claim shall be payable from and have recourse to all pre- and post-petition property of the Debtor and all proceeds thereof, including, upon entry of this Final Financing Order, proceeds of Avoidance Actions (the "Superpriority Claim").

2.3     Carve Out Expenses.

2.3.1     *Carve Out Expenses*. Upon the declaration by Lender of the occurrence of an Event of Default (as defined below), each of Lender's liens, claims and security interests in the Collateral and its Superpriority Claim, shall be subject only to the right of payment of the following expenses (the "Carve Out Expenses"):

a.     statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6);

b.      fees payable to the Clerk of this Court;

c.      subject to the terms and conditions of this Final Financing Order, Allowed Professional Fees (as defined below) by attorneys, accountants and other professionals retained by the Debtor and the Committee (if any) under Section 327 or 1103(a) of the Bankruptcy Code (collectively, the "Professionals"), provided that the aggregate amount of such Allowed Professional Fees included in the Carve Out Expenses pursuant to this clause shall not exceed $200,000 (the "Professional Fee Carve Out").

For the avoidance of doubt, nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described herein.

For purposes of this Final Financing Order, (a) the term "Allowed Professional Fees" shall mean the unpaid and outstanding reasonable fees and expenses of Professionals (i) actually incurred on or after the Petition Date and (ii) allowed at any time by a final order of the Court pursuant to Sections 326, 328, 330 or 331 of the Bankruptcy Code (but excluding any transaction, restructuring, completion, success or similar fees).

2.3.2    *Excluded Professional Fees.*    Notwithstanding anything to the contrary in this Final Financing Order, neither the Professional Fee Carve Out nor the proceeds of any Collateral, loans and advances pursuant to the DIP Loan Documents shall be used to pay any Allowed Professional Fees or any other fees or expenses incurred by any Professional in connection with any of the following: (a) an assertion or joinder in (but excluding any investigation into) any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief: (i) challenging the legality, validity, priority, perfection, or enforceability of or, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, (A) the Obligations and Lender's liens on and security interests in the Collateral, (iii) preventing, hindering or delaying (A) Lender

in asserting or enforcing any lien, claim, right or security interest or realization upon any Collateral in accordance with the terms and conditions of this Final Financing Order and the DIP Loan Documents, (b) a request to use the Cash Collateral (as such term is defined in Section 363 of the Bankruptcy Code) without the prior written consent of Lender in accordance with the terms and conditions of this Final Financing Order, (c) a request for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to Section 364(c) or Section 364(d) of the Bankruptcy Code, other than as provided in the Interim Order or this Final Financing Order, without the prior written consent of Lender, (d) the commencement or prosecution by the Debtor of any action or proceeding of any claims, causes of action or defenses against Lender, or any of its respective officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from Lender, under Chapter 5 of the Bankruptcy Code, or (e) any act which has or could materially and adversely modify or compromise the rights and remedies of Lender or which results in the occurrence of an Event of Default (as defined below). Nothing in this paragraph 2.3.2 shall impair or limit the pursuit of any action against Insiders (as defined in the Bankruptcy Code).

       2.3.3  *Payment of Professionals.*  Except and to the extent set forth in Section 2.5 of this Final Financing Order, Lender, shall not, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any Professionals incurred in connection with the Case under any chapter of the Bankruptcy Code, and nothing in Section 2.3, 2.4, or 2.6 of this Final Financing Order shall be construed to obligate Lender, in any way, to pay compensation to or to reimburse expenses of any Professional, or to ensure that the Debtor has sufficient funds to pay such compensation or reimbursement.

Section 3.    <u>Default; Rights and Remedies; Relief from Stay</u>.

3.1    <u>Events of Default</u>.  The occurrence of any of the following events shall constitute an "<u>Event of Default</u>" under this Final Financing Order:

a.    Debtor's failure to timely perform, in any respect, any of the terms, conditions or covenants or its obligations under the Interim Order or this Final Financing Order;

b.    reversal, vacation or modification of the Interim Order or this Final Financing Order;

c.    An "Event of Default" under the DIP Loan Documents;

d.    the failure to achieve any of the following sale process milestones:

(1)    entry of an Order of the Court not later than June 8, 2015, that;

(i)    in the event Lender is not the successful bidder for Debtor's assets, provides for the payment at closing of such sale to Lender of cash in the amount necessary to pay in full all Obligations due to Lender pursuant to the DIP Loan Documents; or

(ii)    in the event Lender is the successful bidder for Debtor's assets, authorizes the Debtor to sell its assets in form, manner and substance as required in the Sale Agreement.

(2)    Closing of the sale of Debtor's assets on or before five (5) days following the entry of the Order approving such sale.

3.2    <u>Rights and Remedies Upon Event of Default</u>.  Upon the occurrence of and during the continuance of an Event of Default (subject to Section 3.4 below), (i) the Debtor shall

be bound by all restrictions, prohibitions and other terms as provided in this Final Financing Order and the DIP Loan Documents and (ii) Lender shall be entitled to take any act or exercise any right or remedy as provided in this Final Financing Order or the DIP Loan Documents including, without limitation (i) with respect to Lender declaring all Obligations immediately due and payable, accelerating the payment of the Obligations, ceasing to extend loans and advances pursuant to the DIP Loan Documents on behalf of Debtor, setting off any Obligations with Collateral or proceeds in Lender's possession, and enforcing any and all rights with respect to the Collateral.  Lender shall have no obligation to lend or advance any additional funds to or on behalf of Debtor, or provide any other financial accommodations to Debtor, immediately upon or after the occurrence of an Event of Default or upon the occurrence of any act, event, or condition that, with the giving of notice or the passage of time, or both, would constitute an Event of Default.

3.3     Expiration of DIP Loan Commitment.  Upon the expiration of Borrower's authority to borrow and obtain other credit accommodations from Lender pursuant to the terms of this Final Financing Order and the DIP Loan Documents (except if such authority shall be extended with the prior written consent of Lender, which consent shall not be implied or construed from any action, inaction or acquiescence by Lender), unless an Event of Default set forth in Section 3.1 above occurs sooner and the automatic stay has been lifted or modified pursuant to Section 3.4 of this Final Financing Order, all of the Obligations shall immediately become due and payable and Lender shall automatically and completely be relieved from the effect of any stay under Section 362 of the Bankruptcy Code, any other restriction on the enforcement of its liens upon and security interests in the Collateral or any other rights granted to Lender pursuant to the terms and conditions of the DIP Loan Documents or this Final Financing Order, and Lender shall be and is hereby authorized, in its sole discretion, to take any and all

actions and remedies provided to it in this Final Financing Order, the DIP Loan Documents or applicable law which Lender (in its capacity under the DIP Loan Documents) may deem appropriate and to proceed against and realize upon the Collateral or any other property of the Debtor's Estate.

3.4    Relief from Automatic Stay.  The automatic stay provisions of Section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified and vacated without further notice, application or order of the Court to the extent necessary to permit Lender to perform any act authorized or permitted under or by virtue of this Final Financing Order or the DIP Loan Documents, as applicable, including, without limitation, (a) to implement the post-petition financing arrangements authorized by this Final Financing Order and pursuant to the terms of the DIP Loan Documents, (b) to take any act to create, validate, evidence, attach or perfect any lien, security interest, right or claim in the Collateral and (c) to assess, charge, collect, advance, deduct and receive payments with respect to obligations under the DIP Loan Documents including, without limitation, all interest, fees, costs and expenses permitted under the DIP Loan Documents and apply such payments to the Obligations pursuant to the DIP Loan Documents and this Final Financing Order.  In addition, without limiting the foregoing, upon the occurrence of an Event of Default and after providing five (5) business days' prior written notice to counsel for the Debtor, counsel for the Committee (if any), and the U.S. Trustee, Lender shall be entitled to take any action and exercise all rights and remedies provided to it by this Final Financing Order, the DIP Loan Documents, or applicable law as Lender may deem appropriate in its sole discretion to proceed against and realize upon the Collateral or any other assets or properties of Debtor's Estate upon which Lender for the benefit of itself may hereafter be granted liens or security interests to obtain the full and indefeasible repayment of all Obligations.  Notwithstanding anything to the contrary,

any action taken by the Lender to (A) terminate the commitments under the DIP Loan Documents, (B) accelerate the loans and advances made pursuant to the DIP Loans Documents, and (C) repay any amounts owing in respect of the Obligations (including, without limitation, fees, indemnities and expense reimbursements) in each case, shall not require any advance notice to the Debtor.

Section 4.        Representations; Covenants; and Waivers.

4.1    Debtor's Waivers.    At all times during the Case, and whether or not an Event of Default has occurred, the Debtor irrevocably waives any right that it may have to seek authority (i) to use Cash Collateral under Section 363 of the Bankruptcy Code other than as expressly provided for in the Interim Order or this Final Financing Order, (ii) to obtain post-petition loans or other financial accommodations pursuant to Section 364(c) or 364(d) of the Bankruptcy Code that do not provide for the indefeasible payment in cash in full and satisfaction of all Obligations, other than as expressly provided for in the Interim Order or this Final Financing Order, or as may be otherwise expressly permitted pursuant to the DIP Loan Documents, (iii) to challenge the application of any payments authorized by the Interim Order or this Final Financing Order pursuant to Section 506(b) of the Bankruptcy Code, (iv) to propose, support or have a plan of reorganization or liquidation or a sale of assets outside of the ordinary course of business that does not provide for the indefeasible payment in cash in full and satisfaction of all Obligations on the effective date of such plan or sale in accordance with the terms and conditions set forth in the DIP Loan Documents, or (v) to seek relief under the Bankruptcy Code, including without limitation, under Section 105 of the Bankruptcy Code, to the extent any such relief would in any way restrict or impair the rights and remedies of Lender as provided in this Final Financing Order and the DIP Loan Documents or Lender's exercise of such rights or remedies; provided, however, that Lender may otherwise consent in writing, but

no such consent shall be implied from any other action, inaction, or acquiescence by Lender and consent shall be required in order to relieve the Debtor of its obligations under this Section 4.1.

      4.2     <u>Section 506(c) Claims</u>.  No costs or expenses of administration which have or may be incurred in the Case at any time shall be charged against or recovered from Lender or the Collateral pursuant to Section 506(c) of the Bankruptcy Code without the prior written consent of Lender and no such consent shall be implied from any action, inaction or acquiescence by Lender.

      4.3     <u>Collateral Rights</u>.

      4.3.1   Until all of the Obligations shall have been indefeasibly paid and satisfied in full:

      1)     no other party shall foreclose any junior lien or claim in any Collateral; and

      2)     upon and after the declaration of the occurrence of an Event of Default, and subject to Lender obtaining relief from the automatic stay as provided for herein, in connection with a liquidation of any of the Collateral, Lender (or any of its employees, agents, consultants, contractors or other professionals) shall have the right, at the sole cost and expense of Debtor, to (i) enter upon, occupy and use any real or personal property, fixtures, equipment, leasehold interests or warehouse arrangements owned or leased by Debtor and (ii) use any and all trademarks, trade names, copyrights, licenses, patents or any other similar assets of Debtor, which are owned by or subject to a lien of any third party and which are used by Debtor in its businesses.  Lender will be responsible for the payment of any applicable fees, rentals, royalties or other amounts due such lessor, licensor or owner of such property for the period of time that Lender actually uses the equipment or the intellectual property (but in no event for any accrued

and unpaid fees, rentals or other amounts due for any period prior to the date that Lender actually occupies or uses such assets or properties).

    4.4    <u>Releases</u>.

        4.4.1  *Lender.*  Subject to Section 4.1 above, in consideration of Lender making loans and advances and providing other credit and financial accommodations to the Debtor pursuant to the provisions of the DIP Loan Documents and this Final Financing Order, the Debtor, on behalf of itself and its successors and assigns, (collectively, the "<u>Releasors</u>"), shall, forever release, discharge and acquit Lender and Gebrüder Lödige Maschinenbau GmbH and their respective successors and assigns, and their respective present and former members, former shareholders, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees and other representatives (collectively, the "<u>Loan Releasees</u>") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Releasors had, have or hereafter can or may have against Loan Releasees as of the date hereof, in respect of events that occurred on or prior to the date hereof with respect to or in connection with the Debtor, the DIP Loan Documents, and the Collateral.  In addition, upon the repayment of all Obligations owed to Lender by Debtor and termination of the rights and obligations arising under the DIP Loan Documents and this Final Financing Order (which payment and termination shall be on terms and conditions acceptable to Lender), Lender shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of action arising or occurring in connection with or related to the DIP Loan Documents or this Final Financing Order (including without limitation any obligation or responsibility (whether direct or indirect, absolute or contingent, due or not due, primary or secondary, liquidated or unliquidated) to pay or otherwise fund the Carve-Out Expenses and/or

the Processional Fee Carve Out in accordance with Section 2.3 of this Final Financing Order or otherwise), on terms and conditions acceptable to Lender. Nothing in this paragraph 4.4.1 shall act as a release for the benefit of Insiders (as defined in the Bankruptcy Code).

       4.5     Investigation Period. The waivers and releases set forth in Paragraphs 4.1 and 4.4 shall be binding upon the Debtor's estate and each other party in interest, including the Committee (if any), unless such Committee or any other party in interest other than the Debtor commences, on or before the thirtieth (30th) calendar day immediately following the date of entry of the Interim Order to initiate a contested matter or adversary proceeding challenging or otherwise objecting to the releases or waivers set forth in Paragraph 4.1 and 4.4.

Section 5.     Other Rights and DIP Obligations.

       5.1     No Modification or Stay of This Final Financing Order. Notwithstanding (i) any stay, modification, amendment, supplement, vacating, revocation or reversal of this Final Financing Order, the DIP Loan Documents or any term hereunder or thereunder or (ii) the dismissal or conversion of the Case (each, a "Subject Event"), (x) the acts taken by Lender in accordance with this Final Financing Order, and (y) the Obligations incurred or arising prior to either Lender's actual receipt of written notice from Debtor expressly describing the occurrence of such Subject Event shall, in each instance, be governed in all respects by the original provisions of this Final Financing Order, and the acts taken by Lender in accordance with this Final Financing Order, and the liens granted to Lender in the Collateral, and all other rights, remedies, privileges, and benefits in favor of Lender pursuant to this Final Financing Order and the DIP Loan Documents shall remain valid and in full force and effect pursuant to Section 364(e) of the Bankruptcy Code. For purposes of this Final Financing Order, the term "appeal", as used in Section 364(e) of the Bankruptcy Code, shall be construed to mean any

proceeding for reconsideration, amending, rehearing, or re-evaluating this Final Financing Order by this Court or any other tribunal.

    5.2    <u>Power to Waive Rights; Duties to Third Parties</u>.

    5.2.1  *Lender*.  Lender shall have the right to waive any of the terms, rights and remedies provided or acknowledged in this Final Financing Order in respect of Lender (the "<u>Loan Lender Rights</u>"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or failure to exercise or enforce, any Loan Lender Right(s).  Any waiver by Lender of any Loan Lender Rights shall not be or constitute a continuing waiver.  Any delay in or failure to exercise or enforce any Loan Lender Right shall neither constitute a waiver of such Loan Lender Right, or subject Lender to any liability to any other party, nor cause or enable any other party to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtor to Lender.

    5.3    <u>Disposition of Collateral</u>.  Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral without the prior written consent of Lender (and no such consent shall be implied, from any other action, inaction or acquiescence by Lender) and an order of this Court, except for (i) sales of Debtor's Inventory in the ordinary course of its business and (ii) a sale of substantially all of the Debtor's assets pursuant to a sale authorized by the Bankruptcy Court.  Until such time as the Obligations have been paid full, Debtor shall remit to Lender or cause to be remitted to Lender, all proceeds of the Collateral for application in accordance with the DIP Loan Documents.

    5.4    <u>Inventory</u>.  Debtor shall not, without the consent of Lender, (a) enter into any agreement to return any inventory to any of its creditors for application against any pre-petition indebtedness under any applicable provision of Section 546 of the Bankruptcy Code, or

(b) consent to any creditor taking any setoff against any of its pre-petition indebtedness based upon any such return pursuant to Section 553(b)(1) of the Bankruptcy Code or otherwise.

     5.5   <u>Reservation of Rights</u>.  The terms, conditions and provisions of this Final Financing Order are in addition to and without prejudice to the rights of (i) Lender in its capacity as the lender pursuant to the DIP Loan Documents or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of cash collateral or granting of any interest in the Collateral, or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professionals or other parties seeking compensation or reimbursement from the Estate.

     5.6   <u>Binding Effect</u>.

     5.6.1   The provisions of this Final Financing Order and the DIP Loan Documents, the Superpriority Claim, and any and all rights, remedies, privileges and benefits in favor of Lender, provided or acknowledged in this Final Financing Order, and any actions taken pursuant thereto, shall be effective immediately upon entry of this Final Financing Order pursuant to Bankruptcy Rules 6004(g) and 7062, shall continue in full force and effect, and shall survive entry of any such other order, including without limitation any order which may be entered confirming any plan of reorganization, converting the Case to any other chapter under the Bankruptcy Code, or dismissing the Case.

     5.6.2   Any order dismissing the Case under Section 1112 of the Bankruptcy Code or otherwise shall be deemed to provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (a) the Superpriority Claim and Lender's liens on and security interests in the Collateral shall continue in full force and effect notwithstanding such dismissal

until the Obligations are indefeasibly paid and satisfied in full, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the Superpriority Claim in the Collateral.

        5.6.3   To the extent that this Final Financing Order modifies any of the provisions of the Interim Order or the DIP Loan Documents, (a) such modifications shall not affect the rights or priorities of Lender pursuant to the Interim Order with respect to the Collateral or any portion of the Obligations which arise or is incurred or is advanced prior to such modifications, and (b) the Interim Order shall remain in full force and effect except as specifically amended or modified by this Final Financing Order.

        5.6.4   This Final Financing Order shall be binding upon Debtor, all parties in interest in the Case and their respective successors and assigns, including any trustee or other fiduciary appointed in the Case or any subsequently converted bankruptcy case of the Debtor.  This Final Financing Order shall also inure to the benefit of Lender and the Debtor and their respective successors and assigns.

        5.7     <u>Restrictions on Cash Collateral Use, Additional Financing, Plan Treatment</u>.  All post-petition advances and other financial accommodations under the DIP Loan Documents are made in reliance on the Interim Order and this Final Financing Order and there shall not at any time be entered in the Case, or in any subsequently converted case under Chapter 7 of the Bankruptcy Code, any order which (a) authorizes the use of cash collateral of Debtor in which Lender has an interest, or the sale, lease, or other disposition of property of Debtor's Estate in which Lender has a lien or security interest, except as expressly permitted hereunder or in the DIP Loan Documents, or (b) authorizes under Section 364 of the Bankruptcy Code the obtaining of credit or the incurring of indebtedness secured by a lien or security interest which is equal or senior to a lien or security interest in property in which Lender, holds a lien or security

interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to Lender, herein; unless, in each instance (i) Lender shall have given its express prior written consent with respect thereto, no such consent being implied from any other action, inaction or acquiescence by Lender, or (ii) such other order requires that all Obligations shall first be indefeasibly paid and satisfied in full in accordance with the terms of the DIP Loan Documents, including, without limitation, all debts and obligations of Debtor to Lender, which arise or result from the obligations, loans, security interests and liens authorized herein, on terms and conditions acceptable to Lender. The security interests and liens granted to or for the benefit of Lender hereunder and the rights of Lender pursuant to this Final Financing Order and the DIP Loan Documents with respect to the Obligations and Collateral are cumulative and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization or liquidation of Debtor.

       5.8     <u>No Owner/Operator Liability</u>.

       5.8.1   In determining to make any loans or term loans under any of the DIP Loan Documents, the Interim Order, or this Final Financing Order, or in exercising any rights or remedies as and when permitted pursuant to the DIP Loan Documents, the Interim Order, or this Final Financing Order, Lender shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).

       5.9     <u>Marshalling</u>. In no event shall Lender be subject to the equitable doctrine of "marshalling" or any similar doctrine with respect to the Collateral. Lender shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code, and the "equities of

the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to Lender with respect to proceeds, products, offspring or profits of any of the Collateral.

      5.10   Right to Credit Bid.

      5.10.1 Lender shall have the right to "credit bid" the full amount of its claim arising under the terms of the DIP Loan Documents and this Final Financing Order during any sale of all or substantially all of the Debtor's assets, including without limitation, sales occurring pursuant to Section 363 of the Bankruptcy Code or included as part of any restructuring plan subject to confirmation under Section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code.

      5.11   Term; Termination.  Notwithstanding any provision of this Final Financing Order to the contrary, the term of the financing arrangements between Debtor and Lender authorized by this Final Financing Order may be terminated pursuant to the terms of the DIP Loan Documents.

      5.12   Limited Effect.  In the event of a conflict between the terms and provisions of the DIP Loan Documents and this Final Financing Order, the terms and provisions of this Final Financing Order shall govern, interpreted as most consistent with the terms and provisions of the DIP Loan Documents.

      5.13   Retention of Jurisdiction.  This Court has and will retain jurisdiction to enforce this Final Financing Order according to its terms.

      5.14   Carve-out from Collateral and Superpriority Claim.  Notwithstanding anything set forth herein to the contrary, all property acquired or developed by the Debtor in connection with Hershey's purchase orders "PO 66138057" and "PO 66139631" (the "Hershey Purchase Orders"), which includes only the two agitators purchased by the Debtor from Bay Cast, Inc. and certain drawings prepared in connection with the Hershey Purchase Orders, shall

not constitute Collateral hereunder, and such property shall remain free and clear of all liens and

security interests; nor shall such property be available to pay the Superpriority Claim.


Dated: _May 1_____, 2015
     Wilmington, Delaware

                              The Honorable Kevin Gross
                              United States Bankruptcy Judge

*2136921v2*